UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WALDIMIR ADALBERTO CRUZ
ROMERO,

          **Plaintiff,**

          v.

ITW FOOD EQUIPMENT GROUP LLC,

          **Defendant.**

Civil Action No. 11-1799 (ESH)

## MEMORANDUM OPINION

Plaintiff Waldimir Adalberto Cruz Romero brought suit on September 26, 2011, against ITW Food Equipment Group, Inc. Following a five-day trial, the jury returned a verdict in favor of plaintiff for $2,977,997.00 in damages. Intending to file an appeal, defendant filed a motion to stay execution of the judgment on June 19, 2015, and requested approval of a supersedeas bond in the amount of $3,000,000.00 to cover the damages, costs, and post-judgment interest. (*See* Def.'s Mot. to Stay, June 19, 2015 [ECF No. 154].) Plaintiff does not oppose the stay, but rather, he argues that the bond must also include prejudgment interest. (*See* Pl.'s Resp. to Mot. to Stay, June 23, 2015 [ECF No. 155].) Plaintiff also filed a motion to amend the judgment to include prejudgment interest. (*See* Pl.'s Mot. to Amend, June 25, 2015 [ECF No. 163].) Defendant opposes this motion. (*See* Def.'s Opp. to Mot. to Amend, July 7, 2015 [ECF No. 165].) For the following reasons, plaintiff's motion to amend the judgment is denied, and defendant's motion to stay execution of the judgment is granted.

## BACKGROUND

On July 13, 2009, plaintiff was operating a Hobart Model 4046 meat chopper manufactured by defendant. The meat chopper was equipped with a guarded feed pan that rested over the grinding mechanism to prevent injury to the operator's limbs and an interlock device that prevented the meat chopper from operating if the guarded feed pan had been removed. At the time of his accident, plaintiff was using the meat chopper without the guarded feed pan and he had bypassed the interlock by placing a bowl of chicken on the device. Plaintiff slipped while feeding chicken into the meat chopper, resulting in the loss of his lower forearm. Plaintiff brought this strict liability action claiming that defendant failed to provide an adequate warning.[1] The first trial in May 2014 ended in a hung jury.

A second trial began on June 1, 2015, and on the second day of deliberations, the jury returned a verdict in favor of plaintiff, finding that 1) defendant owed a duty to warn plaintiff of the risks associated with using the meat chopper, 2) defendant failed to provide an adequate warning, and 3) this failure to warn was a substantial factor in causing plaintiff's injuries. (*See* Verdict Form, June 9, 2015 [ECF No. 149].) The jury also found that plaintiff had not misused the meat chopper, he had not assumed the risk in using the machine without its safety mechanisms in place, and it was foreseeable that users of the meat chopper would not be properly trained. (*See id.*) The jury awarded a judgment of $2,977,997.00, including $193,154.00 in past medical expenses, $1,587,571.00 in future medical expenses, $97,272.00 in past lost earnings, and $1,100,000.00 in pain and suffering. (*See id.*) On June 10, 2015, the Clerk of Court entered judgment in plaintiff's favor plus costs. Pursuant to 28 U.S.C. § 1961,

---

[1] For a more detailed account of the facts, *see* Mem. Op., Oct. 30, 2013 [ECF No. 43].

plaintiff was also awarded post-judgment interest from the date that judgment was entered.  *See* 28 U.S.C. § 1961.

Before the Court are defendant's motion to stay execution of judgment, which seeks approval of a $3,000,000.00 bond to satisfy the judgment, costs, and post-judgment interest pending appeal (*see* Def.'s Mot. to Stay at 1), and plaintiff's motion to amend the judgment to include prejudgment interest, which would increase the judgment to $4,022,995.00.  For the following reasons, the Court denies plaintiff's motion to amend the judgment and grants defendant's motion to stay.

## ANALYSIS

**I.     STANDARD OF REVIEW**

Plaintiff timely filed his motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) to include prejudgment interest.  *See Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989)).  "A federal court sitting in diversity must look to local law to determine whether prejudgment interest is available."  *Embassy of the Fed. Republic of Nigeria v. Ugquonye*, 945 F.Supp. 2d 81, 86 (D.D.C. 2013) (citing *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 855 (D.C. Cir. 1981)).  In the District of Colombia, interest on a judgment for damages in contract or tort is governed by D.C. Code § 15-109, which provides:

> In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff.  In an action to recover damages for a wrong the judgment for the plaintiff shall bear interest.

D.C. Code § 15-109.  The District of Colombia Court of Appeals has interpreted this statute as "authorizing post-judgment interest in both tort and contract cases, but pre-judgment interest

only in contract cases. . . . On the other hand, there is nothing in section 15-109 that prohibits an award of pre-judgment interest." *Duggan v. Keto*, 554 A.2d 1126, 1140 (D.C. 1989). The *Duggan* court concluded that prejudgment interest in a tort action is neither authorized nor prohibited by statute, but "pre-judgment interest may be included as part of the damages in an action for conversion to the extent that it will make the injured party whole." *Id.*

Applying D.C. law, courts have determined that prejudgment interest is appropriate in cases sounding in contract, *see Embassy of the Fed. Republic of Nigeria*, 945 F. Supp. 2d at 86 ("Where a plaintiff has been deprived of the use of money that has been withheld, prejudgment interest 'is an element of complete compensation for the loss of use of such money.'" (quoting *Riggs Nat'l Bank v. Dist. of Columbia*, 581 A.2d 1229, 1253 (D.C. 1990)); unjust enrichment, *see Griffith v. Barnes*, 560 F. Supp. 2d 29, 36 (D.D.C. 2008) (prejudgment interest was appropriate on the amount of disgorgement because "'[t]he purpose of awarding prejudgment interest as part of the damages for breach of contract is to compensate the creditor for the loss of the use of money over time.'") (quoting *Fed. Marketing Co. v. Virginia Impression Products Co., Inc.*, 823 A.2d 513, 531 (D.C. 2003)); and conversion. *See Duggan*, 554 A.2d at 1140. By contrast, the Court has not found, and the parties have not cited, any cases in which prejudgment interest was awarded in a personal injury, product-liability action,[2] although it is recognized that "the court has ample discretion to include prejudgment interest 'as an element in the damages awarded, if necessary to fully compensate the plaintiff.'" *Fed. Marketing Co.*, 823 A.2d at 532 (quoting D.C. Code § 15-109). This decision is thus guided by equitable considerations. *See*

---

[2] The D.C. Circuit has noted that "[i]t remains unclear whether prejudgment interest is available in a negligence action." *Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 238 (D.C. Cir. 1991). "[N]egligence and strict liability, in failure to warn cases, are functional equivalents." *McNeil Pharm v. Hawkins*, 686 A.2d 567, 578 (D.C. 1996).

*Mwani v. Al Qaeda*, No. 99-0125, 2014 WL 4749182, *13 (D.D.C. Sept. 25, 2014); *Motion Picture Ass'n of America, Inc. v. Oman*, 868 F.2d 1154, 1157 (D.C. Cir. 1992).

## II.   PREJUDGMENT INTEREST

Plaintiff argues that he is entitled to prejudgment interest because 1) prejudgment interest is available to prevailing plaintiffs in tort actions, 2) "delay damages" should be awarded absent some justification for withholding such an award, and 3) the equities weigh in favor of awarding plaintiff prejudgment interest to make him whole.  (*See* Pl.'s Mem. in Supp. of Mot. to Amend, June 25, 2015 [ECF No. 163-2] at 1-2.)  Defendant counters that prejudgment interest is not available for a personal-injury, product-liability action, but only in tort actions where "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment."  (*See* Def.'s Opp. to Mot. to Amend at 2 (quoting *Maryland State Hwy. Admin. V. Kim*, 726 A.2d 238, 245 (Md. 1999)).)  Defendant also argues that prejudgment interest is not equivalent to delay damages and equities are not relevant in this analysis.  (*See id.* at 5.)

The Court agrees with defendant that prejudgment interest has not usually been awarded in a case such as this, and even if it were, the Court would not exercise its discretion to do so.

The cases plaintiff cites in support of his argument that prejudgment interest is available in a tort action involve torts in which the harm itself was an economic loss.  For example, *Duggan*, a case heavily relied upon by plaintiff, was a conversion case related to an estate dispute.  *See* 554 A.2d at 1126.  The estate of the deceased was deprived of interest on several bonds to which it was entitled because they were improperly removed from a safe-deposit box by a relative.  *See id.* at 1128.  The court held that the estate should receive the benefit of all interest that accrued on the bonds from the time of conversion "to the extent that it will make the injured

party whole." *Id.* at 1140. The harm the estate suffered was an economic loss, and it was deprived of a definite amount of money that was certain from the moment the tort occurred. Indisputably, the award of prejudgment interest was necessary to make the injured party whole.

By contrast, plaintiff's injury was not an economic loss; it was a physical injury to his right limb. This injury may very well have led to a serious economic loss since plaintiff's employment prospects have been severely limited by his injury,[3] but the nature of his harm is wholly different from that in *Duggan*. Unlike *Duggan* and the other cases cited by plaintiff, defendant was not wrongfully in possession of something belonging to plaintiff.[4] *See In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 241 (D.D.C. 2005) ("I cannot equate the situation here with the ones encountered in the case law I surveyed in *Athridge* where one party can truly be said to have held onto something that clearly belonged to someone else.").

---

[3] In fact, the jury award itself is meant to ameliorate the losses plaintiff has incurred as a result of the harm he suffered. *See, e.g.*, *George Hyman Const. Co., Inc. v. DiNicola*, 514 A.2d 1180, 1183 (D.C. 1986) ("[E]ven if section 15-109 should be construed to permit prejudgment interest in tort actions, such interest would be an 'element in the damages awarded.'" (quoting D.C. Code 15-109)).

[4] Plaintiff also cites *Ben-Rafael v. Islamic Republic of Iran* to support his position that prejudgment interest should be calculated from the date of the tortious act. (*See* Pl.'s Mem. in Supp. of Mot. to Amend at 7.) In *Ben-Rafael*, plaintiffs brought intentional infliction of emotional distress and wrongful death claims against the Islamic Republic of Iran under the Foreign Sovereign Immunity Act for the 1992 terrorist bombing of the Israeli embassy in Buenos Aires, Argentina. 540 F. Supp. 2d 39 (D.D.C. 2008). The Islamic Republic of Iran failed to appear, and the Court entered a default judgment for the plaintiffs. *See id.* at 60. Noting that awarding prejudgment interest was within its discretion, the Court concluded that prejudgment interest was appropriate under the circumstances because "courts in this Circuit have awarded prejudgment interest in cases where plaintiffs were delayed in recovering compensation for their injuries—including, specifically, where such injuries were the result of targeted attacks perpetrated by foreign defendants." *Id.* (quoting *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 263 (D.D.C. 2008)). The default judgment was entered sixteen years after the date of the bombing, and there was no guarantee that plaintiffs would be able to recover the judgment awarded. By contrast, as discussed below, there is no evidence that plaintiff has been delayed in recovering compensation for his injuries, especially given the fact that he did not file this case until 2011.

6

Plaintiff responds that because prejudgment interest is allowed in some tort actions, "it must follow that prejudgment interest is allowed in product liability actions – even if there is no case expressly on this point (yet)." (Pl.'s Reply, June 24, 2015 [ECF No. 156] at 3.)  This argument fails to recognize that the purpose of such an award under *Duggan* is to make the prevailing plaintiff whole.  For example, in the case of conversion, disgorgement together with interest calculated from the time the tort occurred may be necessary to make the plaintiff whole.  Whereas here, the jury was tasked with calculating an award that would make the plaintiff whole.  (*See* Jury Instructions, June 8, 2015 [ECF No. 142] at 28 ("If you find for plaintiff, then you must award plaintiff a sum of money that will fairly and reasonably compensate him for all the injuries, harms, and losses that he experienced that you find were proximately caused by defendant.").)  Following this instruction, the jury determined that an award of $2,977,997.00 would be sufficient to make plaintiff whole.

Even if prejudgment interest were available in a personal injury, product-liability action, there is justification for withholding an award of "delay damages" in this case.  *See Fed. Marketing Co.*, 823 A.2d at 532 (D.C. 2003) (prejudgment interest is usually unavailable in cases involving unliquidated claims, but "[t]he court usually should award such 'delay damages' in such cases 'absent some justification for withholding such an award.'") (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983)).  Defendant had no obligation to pay the jury award until final judgment was entered on June 10, 2015.  *See Athridge v. Iglesias*, 382 F. Supp. 2d 42, 54 (D.D.C. 2005) (defendants "had no obligation to pay . . . until entry of final judgment against *them*.").  Contrary to plaintiff's position, defendant was not profiting from the use of money it owed plaintiff between 2009 and 2015 because its responsibility to pay plaintiff did not accrue until the verdict was rendered.  *See, e.g., id.* at 52 ("Plaintiffs had no right to be paid $5.5

million – from the [defendants] – until there was a factual finding holding them liable for the accident and the damages that the minor plaintiff sustained. Accordingly, the [defendants] were not enjoying the use of money that they owed plaintiffs during the course of the litigation because *they did not owe the money until the . . . verdict against them was rendered.*"). Thus, assuming *arguendo* that prejudgment interest is available in this type of case, it would be unfair to require defendant to pay interest for the intervening six years. *See id.* at 54.

The equities also do not weigh in plaintiff's favor. Plaintiff notes that "Defendant took an unreasonable and obstinate stance with respect to settlement throughout the history of this case, including but not limited to after the jury in the first trial deadlocked; and Defendant intends to further prolong paying the debt it owes Plaintiff as evidenced by its stated intent to file an appeal." (Pl.'s Mem. in Supp. of Mot. to Amend at 6-7.) However, defendant was not required to settle, nor is defendant responsible for the delayed entry of final judgment caused by the mistrial. There is no evidence that defendant has acted in bad faith in its approach to settlement discussions nor in its defense against plaintiff's claim. Plaintiff will also not be prejudiced by defendant's pursuit of an appeal because he is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961. Thus, even if prejudgment interest were available in this case, the Court would not exercise its discretion to add prejudgment interest to the jury's verdict.

### III.   STAY OF EXECUTION OF JUDGMENT

In his response to defendant's motion to stay execution of the judgment, plaintiff stated that he would not oppose a stay if defendant "posts a supersedeas bond sufficient to satisfy its *entire* financial responsibility to Plaintiff." (Pl.'s Resp. to Mot. to Stay.) Because the Court declines to award prejudgment interest, defendant's proposal of a $3,000,000.00 bond is

approved. The $3,000,000 bond is sufficient to cover defendant's entire obligation. Thus, plaintiff's sole objection to the stay is satisfied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the judgment is denied and defendant's motion to stay execution of the judgment pending disposition of post-trial motion and appeal is granted.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: August 6, 2015